In the Matter of the Application of BAINBRIDGE COLBY, Petitioner, for an Order of Mandamus against IMBRIE & COMPANY, LTD., and Others, Respondents.

Supreme Court, New York County, February 1, 1926.

Corporations — capital stock — redemption — certificate of incorporation controls right to redeem — shareholders cannot advance date for redemption specified in certificate — attempt to redeem contrary to certificate does not deprive stockholder of status — examination of books — stockholder entitled to peremptory mandamus order to examine books and records of corporation to determine why dividends have not been paid and what consideration has been paid for stock.

Under a certificate of incorporation providing for the redemption of shares of stock on or after April 1, 1926, upon a majority vote of founders shares then outstanding and upon not less than thirty days' notice to stockholders whose shares are sought to be redeemed, the provision as to the time when the right of redemption shall first accrue cannot be waived by the holders of said founders shares of stock and redemption cannot take place prior to April 1, 1926. Stock redeemed must be paid for at a stipulated price plus dividends that have accrued thirty days after notice of redemption is given.

Accordingly, an attempt to redeem petitioner's shares prior to April 1, 1926, in pursuance of a resolution of the holders of founders stock passed December

29, 1925, authorizing the board of directors to waive on behalf of the corporation the provision as to the time of the redemption, the notice of which states that petitioner's shares were called at $100 a share and accrued dividends to April 1, 1926, is ineffective and does not operate as a redemption of his shares, so as to deprive him of his status as stockholder; therefore, at the time the application was made herein for a peremptory mandamus order to compel the inspection of books and records, about January 1, 1925, petitioner was a stockholder in the corporation and as such was entitled to apply for the order.

The petitioner is entitled to a peremptory order of mandamus compelling the corporation to permit him to inspect the books and records of said corporation for the purpose of ascertaining why no dividends have been paid, although large profits have been earned and to ascertain if full consideration has been paid for stock issued as required by section 69 of the Stock Corporation Law; the petitioner seeks the inspection for the purpose of protecting his stock interests.

APPLICATION for an order of mandamus.

*Isidor J. Kresel,* for the petitioner.

*Rabenold & Scribner* [*Allan R. Campbell* of counsel], for the respondents.

LEVY, J. The respondents here have attempted to redeem the stockholdings of the petitioner, Bainbridge Colby, and thereby to frustrate his efforts to secure an examination of the books and records of the respondent corporation. The attempt is clearly abortive. According to the plain and unmistakable language of the certificate of incorporation, the company's option to redeem does not spring into being until April 1, 1926. It can only be exercised by a majority vote of the founders stock " *at the time* " outstanding, and then only upon not less than thirty days' notice, to the stockholders whose shares are sought to be redeemed. No redemption can be had if the surplus will thereby be reduced " to an amount less than one-half of the aggregate par value of the preferred stock outstanding after the right of redemption shall have been exercised." These inhibitions of the charter are not mere technicalities. On the contrary, they constitute substantial obstacles to any effort at premature redemption. *The ownership of part or all of the founders shares may change before the 1st day of April, 1926, at which date for the first time, as has already been observed, the founders shares may properly become the subject of redemption.* The surplus, assuming that it is sufficient at the present time to allow of the redemption, may, by April first, be reduced below the minimum requirement; it may even be transformed into a deficit, and should the petitioner accept the redemption price of his stock at the present time, in obvious violation of the express wording of the charter, he may subject himself to subsequent liability to repay the moneys in an action brought by creditors or other stockholders. (*Matter of Fechheimer Fishel Co.*, 212 Fed. 357.)

At the special meeting of the holders of founders stock occurring December 29, 1925, the board of directors was authorized " to waive on behalf of the corporation the provision * * * with respect to the time of redemption " and to redeem at " $100 per share plus *accrued dividends to April 1st, 1926.*" (Italics mine.) I am not at all satisfied that the corporation had the power to waive a provision which, according to the clear wording of the certificate of incorporation, was intended to be a *restriction* on its right to redeem. *Moreover, the redemption price fixed in such resolution was less than that required by the charter.* It is easy to see that in no event could the stock be redeemed unless dividends accruing to at least May 1, 1926, thirty days after the first day upon which the option to redeem could have been exercised, were proffered to the given stockholders. The notice of redemption which was sent to the petitioner states that his stock " is called for redemption at $100 per share and accrued dividends *to April 1, 1926* " (italics mine), and the tender alleged to have been made to him was on that very basis, and, therefore, clearly insufficient.

In the light of the foregoing, there can be no question but that the petitioner is still a stockholder in the company and, as such, is entitled to make this application for an order of mandamus. Nor can there be any question as to his right to the relief, unless the examination is not sought in good faith or for a legitimate purpose. (*Matter of Steinway,* 159 N. Y. 250; *People ex rel. Ludwig v. Ludwig & Co.,* 126 App. Div. 696.) Examples of improper motives or illicit purposes may be said to be the gratification of idle curiosity, the wrongful advantage of a competitive business, blackmail or speculation. (See *People ex rel. Britton* v. *Am. Press Assn. No. 1,* 148 App. Div. 651; *People ex rel. Althause* v. *Giroux Consolidated M. Co.,* 122 id. 617; *People ex rel Lehman* v. *Consolidated Fire Alarm Co.,* 145 id. 427; *People ex rel. Hunter* v. *National Park Bank,* 122 id. 635; *Matter of Hitchcock,* 157 id. 328, 329.) The papers before me present no evidence whatsoever of an improper or illegitimate motive or purpose for desiring the examination. On the contrary, they indicate rather strongly the existence of a situation which requires just that very sort of inquiry into the conduct of the company's affairs. At the time of its organization in April, 1924, the petitioner actually paid $25,000 for 250 shares of preferred stock and 125 shares of participating stock. As late as December 28, 1925, more than a year and a half later, the only other stock outstanding consisted of 125 shares of preferred stock and 62 shares of participating stock, held by Adams Securities Corporation and 100 founders shares held by Imbro Corporation. According to the statement of counsel for the

respondents upon the oral argument, and this seems rather strange, an additional 125 shares of preferred stock and 63 shares of participating stock were issued to Adams Securities Corporation some time between December 28, 1925, and January 9, 1926, the date of the verification of Imbrie's answering affidavit herein, and it is not at all clear when payment therefor was really made. From the very answering affidavits I gather that the total consideration for the 250 shares of preferred stock and the 125 shares of participating stock held by Adams Securities Corporation, as well as for the 100 founders shares held by Imbro Corporation, was the sum of $25,000, that being the consideration expressed in the terms of the offer by Adams Securities Corporation and which the respondent corporation had accepted. The founders shares were issued to Imbro Corporation as nominee of Adams Securities Corporation. As section 69 of the Stock Corporation Law* prohibits the issue of shares having par value "for money in an amount less than the par value of such shares," it must be evident that the founders shares, as well as the participating shares, were issued without any consideration whatever and in violation of the first sentence of the section named. The attempt of the respondents to befog the issue by intimations that the assignment of the sublease and the sale of the furniture constituted part of the consideration for the founders shares finds no support in their affidavits. The clear and unequivocal text of the offer by Adams Securities Corporation provided that $5,000 in cash was to be paid for the lease and furniture, and $25,000 for the 250 shares of preferred stock of the par value of $100 each, as well as the 125 shares of participating stock and the 100 founders shares. This is the offer in the form in which the respondent corporation saw fit to accept it according to the resolution quoted by Imbrie on pages 5 and 6 of his affidavit.

It seems perfectly clear, therefore, that in October, 1925, when the petitioner commenced to demand an inspection of the corporate books, he had contributed two-thirds of the actual capital of the corporation, not to speak of the lucrative business he obtained for it and the advice he had furnished and the services he had rendered. Although more than a year and a half had elapsed since the formation of the company, it is undenied that no dividends had been declared on the various classes of stock, this, despite the fact that it is unchallenged that the respondent corporation realized approximately $875,000 from two engagements which the petitioner had secured for it. The latter, naturally enough, grew a trifle curious, if not even anxious, which occasioned his demand

---

* Laws of 1923, chap. 787.— [REP.

for inspection.  A course of correspondence followed between the attorneys for the respective parties, and it developed that the stock book did not contain the necessary statement of the consideration paid for the various certificates of stock issued by the company, as required by section 10 of the Stock Corporation Law.*  Then, for the first time, the respondents rather conveniently conceived of a method by which they most likely thought they could deprive the petitioner of his right to the examination sought.  On December 29, 1925, their counsel wrote that the *board of directors* had decided to redeem the petitioner's stock as of April 1, 1926, and that " *this would seem to dispose of any question of examination of the books.*"  (Italics mine.)  Apart from the valid objections to the attempted premature redemption, it must be apparent that the authority to redeem the stock was vested, not in the directors, but in the holders of the founders stock; and I am satisfied that the endeavor of the petitioner to investigate into the item of consideration in respect to the founders shares is legitimate and proper as is his desire to ascertain why no dividends have been paid upon his stock, and why the stock book fails to recite the consideration received for any of the stock. The entry in this book " fully paid " in this connection does not preclude him in any wise, and I do not deem it needful to argue at any length in support of this proposition.

I can see no analogy between the present case and that of *Matter of Taylor* (117 App. Div. 348), where the mandamus was sought for the purpose of maintaining an action of deceit by the individual against certain directors, also as individuals.  The court there has well stated (at p. 349):  " It is, therefore, not as a stockholder, but as a plaintiff in a suit against individuals not affecting the management, conduct or control of the corporation, that he demands this writ."  The facts of the instant case also clearly distinguish it from the other cases cited by the respondents where mandamus was sought for purposes personal with the stockholder and not necessary for the protection of his stock interest.  Here, I am convinced that there was an improper and unauthorized issue of founders stock and that the attempt at redemption of the petitioner's stock is equally vicious.  The petitioner is, therefore, clearly entitled to the peremptory order of mandamus and the motion is granted, with costs.  Settle order on one day's notice.

* Laws of 1923, chap. 787.— [REP.